# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **H.B.**

**No. 21-0135** (Wood County 20-JA-65)

## MEMORANDUM DECISION

Petitioner Mother J.J., by counsel Michele Rusen, appeals the Circuit Court of Wood County's January 27, 2021, order terminating her parental rights to H.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, Debra L. Steed, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that it was error to adjudicate her of abuse or neglect and to terminate her parental rights without considering less-restrictive alternatives.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2020, the DHHR filed an abuse and neglect petition alleging that it received a referral from an individual who was watching H.B. for petitioner. According to this individual, then-eight-year-old H.B. disclosed that her maternal uncle touched her inappropriately. The reporter also indicated that H.B. disclosed that she was exposed to drug use and domestic violence. The reporter believed petitioner was attempting to evade Child Protective Services ("CPS") by moving to at least four different places within West Virginia within a short timeframe. CPS began an investigation, during which the child confirmed that petitioner and the father engaged in physical altercations with her adult brother and that she did not feel safe in petitioner's home. The child also described seeing petitioner, the father, and her adult brother smoke something out of a glass pipe that "isn't tobacco." According to the child, petitioner and the other adults smoked daily. The child also confirmed that her uncle "touched [her] where he wasn't supposed to." CPS contacted petitioner, who agreed to a temporary protection plan that allowed the child to stay out

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

of the home while CPS completed its investigation. The child then underwent a forensic interview, during which she described the domestic violence she witnessed in petitioner's home in detail, including that she had observed physical injuries on both parents following their altercations with her brother. The child also disclosed that she witnessed physical altercations between petitioner and her father, including instances when petitioner was the aggressor. The child also indicated that her brother physically abused her as well and that petitioner "only believed [her] sometimes." Further, the child described petitioner "smok[ing] dope" that was clear in appearance. The child then disclosed an instance in which she visited her "Papaw" and her uncle took her on a four-wheeler ride. While she was with her uncle, he touched her on her "girl place," which she gestured to be her groin. According to the child, after informing petitioner about the incident, petitioner instructed her simply to not ride on the uncle's four-wheeler again. Based on these facts, the DHHR alleged that petitioner abused and/or neglected the child by engaging in domestic violence in her presence, abusing substances that inhibited her ability to parent, and allowed the child to be cared for by inappropriate individuals.

In September of 2020, the court held an adjudicatory hearing. The court considered the child's recorded interview, which it found "credible and consistent to a large degree," and testimony from other individuals, including petitioner. Based on the evidence, the court found that petitioner engaged in domestic violence in the home in the child's presence and abused drugs in the child's presence. As such, the court found clear and convincing evidence that petitioner abused and neglected the child. The court also granted petitioner a post-adjudicatory improvement period. Following the hearing, the multidisciplinary team ("MDT") developed terms and conditions for petitioner's improvement period, including that she be required to participate in parenting services, attend visitation with the child, abstain from drugs and alcohol, complete a substance abuse assessment, submit to random drug screens, participate in a domestic violence group, and engage in therapy, among other requirements.

In a court summary filed on October 30, 2020, the DHHR indicated that it had no contact with petitioner following the prior hearing. According to the DHHR, petitioner informed the worker that she did not have a phone. The DHHR also indicated that petitioner had not submitted to any drug screens. According to a DHHR court summary filed on December 17, 2020, petitioner still had not contacted the DHHR or her service providers, had not submitted to any drug screens, and still had not signed the terms and conditions of her improvement period. During a hearing in December of 2020, the DHHR and the guardian moved to terminate petitioner's improvement period due to her noncompliance. The court granted the motion and set the matter for disposition.

In a court summary from January 20, 2021, the DHHR indicated that it still had no contact with petitioner. Moreover, petitioner still had not signed the terms and conditions of her improvement period, contacted her service providers, or otherwise participated in any way. The child's CASA representative also filed a report that stated that "CASA is not aware of any actions taken by [petitioner] to complete the requirements of the improvement period." That same month, the court held a dispositional hearing, during which it found that petitioner "had the opportunity to comply with her improvement period since September 9, 2020, yet she has never signed her terms and conditions." The court also found that petitioner "has not stayed in contact with the Department worker, [her service provider], has not participated in visitation, and has not drug screened." Based on the evidence of petitioner's total noncompliance during the proceedings, the

court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her rights was necessary for the child's welfare. Therefore, the court terminated petitioner's parental rights.[2] It is from the circuit court's dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the court erred in adjudicating her of abusing and neglecting the child. Without any citation to the record, in violation of Rule 10(c)(7) of the Rules of Appellate Procedure, petitioner simply asserts that the court's findings of abuse and neglect are "without factual support" and that there was "no evidence that [she] abused her child." This argument is a gross misrepresentation of the record. As set forth above, the court considered the child's forensic interview, wherein she disclosed having witnessed petitioner engage in domestic violence with multiple family members and abuse drugs on a daily basis. This is more than sufficient evidence upon which to base petitioner's adjudication. According to West Virginia Code § 49-1-201, an "abused child" is a child "whose health or welfare is being harmed or threatened by . . . [a] parent . . . who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home." The evidence clearly shows that petitioner's conduct, at a minimum, threatened to inflict mental or emotional injury on the child, as evidenced by the fact that the child disclosed that she did not feel safe in petitioner's home because of the extensive domestic violence and substance abuse. The court further found that the child's disclosures were credible, a finding we decline to disturb on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). As such, it is clear that petitioner is entitled to no relief.

---

[2]The father is currently participating in an improvement period. According to the DHHR, the permanency plan for the child is reunification with the father, while the concurrent permanency plan is adoption in the current foster home.

Finally, petitioner argues that the circuit court erred in terminating her parental rights because she could not receive mail or phone messages regarding these proceedings due to her homelessness and poverty which greatly hindered her ability to participate in the proceedings. We find no merit to this argument. Although it is true that the DHHR recognized that petitioner lacked a phone, we nonetheless recognize that

> [w]hen any improvement period is granted to a respondent pursuant to this section, the respondent shall be responsible for the initiation and completion of all terms of the improvement period. The court may order the state department to pay expenses associated with the services provided during the improvement period when the respondent has demonstrated that he or she is unable to bear the expenses.

W. Va. Code § 49-4-610(4)(A). According to the record, petitioner did not make any effort to participate in her post-adjudicatory improvement period. This includes her failure to take even the meager step of signing the terms and conditions thereof. Further, while petitioner indicated that she did not have access to a phone, she did not address this issue with the DHHR in any way such that she could fulfill her responsibilities under the improvement period. In short, petitioner's lack of a phone did not absolve her of making some effort to contact the DHHR or otherwise participate in services designed to remedy the conditions of abuse and neglect at issue.

Based on petitioner's total noncompliance during the proceedings below, we find no error in the circuit court's termination of her parental rights. While petitioner argues that the court did not consider any less-restrictive dispositional alternatives, we find that it was not required to because it found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the child's welfare. West Virginia Code § 49-4-604(c)(6) permits a circuit court to terminate parental rights upon these findings, and petitioner does not challenge them on appeal. Further, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the circuit court's termination of petitioner's parental rights.

Lastly, because the proceedings regarding the father are ongoing, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires that

4

[a]t least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(c)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 27, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: June 22, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton